PARK v. PYLE et al.

(Court of Civil Appeals of Texas. Dallas. May 3, 1913. Rehearing Denied May 24, 1913.)

1. TRUSTS (§ 30½*)—CONSTRUCTIVE TRUSTS—CONTRACT BETWEEN PARTIES.

Under an agreement reciting that defendant, plaintiff, and another held notes secured by liens upon the furniture and general assets of a newspaper with which they had contracted for advertising space, and providing that all money collected under such advertising contract should be paid to defendant and by him deposited in a certain bank, to be kept there as a separate fund for the use and benefit of the parties, in stated proportions, that each month the money on deposit should be distributed between them equally, and that after $7,500 had been collected all future collections should be divided ratably, there was no such trust relation between defendant and plaintiff as to require defendant, out of the money collected from the sale of space under such contract, to pay plaintiff's subsequent note secured by pledge of the notes referred to in the contract or to prohibit defendant's purchase of such pledged notes. · ·

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 41, 41½; Dec. Dig. § 30½.*]

2. TRIAL (§ 251*)—INSTRUCTIONS—APPLICABILITY TO ISSUES.

In an action to recover money based on the theory of a trust alleged to have been created by a contract between the parties, held, that an instruction that defendant must have bought notes, pledged by plaintiff as collateral, in good faith and in due course of business was objectionable as injecting foreign issue into the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

3. TRIAL (§ 243*)—CONFLICTING INSTRUCTIONS.

In an action to enforce a trust rising out of a contract and out of defendant's purchase of plaintiff's notes sold by the bank to whom he had given them as collateral, instructions held

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

conflicting as giving no affirmative and definite rule to enable the jury to properly determine the issue involved.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 564, 565; Dec. Dig. § 243.*]

4. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING ISSUES.

In an action to establish and enforce a trust under a contract whereby defendant was to collect and apply certain amounts on notes owned by plaintiff, among other notes, instructions as to defendant's liability *held* erroneous as ignoring the issue whether defendant was not the owner of the notes under his purchase at a sale by a bank to which plaintiff had pledged them to secure a debt.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

5. TRIAL (§ 255*)—INSTRUCTIONS—ERROR OF OMISSION—ABSENCE OF REQUEST FOR SPECIAL CHARGE.

An error of omission in an instruction furnishes no ground for complaint in the absence of a requested charge covering the matter.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–641; Dec. Dig. § 255.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by O. P. Pyle against Milton Park and others. Judgment for plaintiff, and defendant Park appeals. Reversed and remanded.

J. C. Muse and W. L. Crawford, both of Dallas, for appellant. M. L. Dye, of Dallas, for appellees.

TALBOT, J. This is an appeal from a judgment in favor of appellee, Pyle, against appellant for the sum of $2,641.24, with interest thereon from June 10, 1912, at the rate of 6 per cent. per annum.

On March 14, 1907, Milton Park, the appellant, sold to the Farmers' Educational & Co-Operative Union Publishing Company, O. P. Pyle, and George B. Latham certain printing presses, etc., and received the several notes of said parties therefor in the sum of $500 each, all dated March 14, 1907, and bearing interest from date, providing for 10 per cent. interest and attorneys' fees, and secured by a recorded lien upon the property sold. Five of these notes were unpaid, aggregating $2,500, besides interest. On April 6, 1908, said above company, Pyle, and Latham sold said property to Aaron Smith and M. S. Sweet, of Ft. Worth, for the sum of $2,500 cash, and 22 or 24 notes (the exact number being in dispute) of said date, executed by Smith & Sweet to said company, 11 or 12 of said notes being for $345 each, and 11 or 12 of them being for $405 each, all bearing 8 per cent. interest from date, and providing for 10 per cent. attorneys' fees; and the further consideration of the assumption of Park's debt secured by a superior lien on said property. In this sale Latham became the owner of the 11 or 12 $345 notes, and O. P. Pyle the owner of the 11 or 12 $405 notes. On the 19th of October, 1908, Milton Park, O. P. Pyle, and George B.

Latham entered into a written agreement with Smith & Sweet whereby 7,000 inches of advertising space might be sold in the paper of Smith & Sweet by said Pyle, Latham, and Park, and the proceeds applied upon said notes; Smith & Sweet undertaking to publish same in their said paper. Said sale of advertising space to terminate June 1, 1910, except under conditions, provided the user of said advertising space to be in settlement of all notes remaining unpaid and specified. So far as necessary to state, the last-mentioned contract provides: "When above conditions have been complied with, and the 7,000 inches of space have been used, by parties of the first part, parties of the first part agree to cancel all notes now held by each and all of them and deliver same to parties of the second part, to wit: Five notes of five hundred dollars each executed on March 14, 1907, by O. P. Pyle, and George B. Latham and payable to Milton Park and due, respectively, January 1, 1909, July 1, 1909, January 1, 1910, July 1, 1910, January 1, 1911, and assumed by parties of the second part, and ten notes payable to the Farmers' Educational & Co-Operative Union Publishing Company, and now held by O. P. Pyle for four hundred and five dollars each, and ten notes for three hundred and forty-five dollars each, payable to the Farmers' Educational & Co-Operative Union Publishing Company, now held by George B. Latham, all of which notes were executed by Aaron Smith and M. S. Sweet on the 6th day of April, 1908. The first two notes of the ten notes mentioned above are due and payable April 1, 1909, and two notes of like amounts become due every six months thereafter until October 1, 1913. Space used under this contract is to be credited on above notes as used. Whether the entire seven thousand inches of space is used or not by June 1, 1911, the remainder, if any, of the above indebtedness of Smith & Sweet, including principal and interest, is hereby agreed to be canceled on that date and held void and of no effect, and all notes, if any unpaid, and the deed of trust are to be canceled and delivered to said Smith & Sweet. The moneys accruing from the execution of this contract shall be applied to the liquidation of the notes herein named in their respective order as per the original contract." "Failure to carry out any or all the provisions of this contract by the parties of the second part shall in no way affect existing contracts and agreements heretofore made by them."

On October 19, 1908, Pyle, Park, and Latham executed the following written agreement, viz.: "Whereas, Milton Park, O. P. Pyle and George B. Latham hold certain notes, which are secured by liens upon the office furniture, fixtures, type and general assets of the National Co-Operator, a newspaper published in the city of Ft. Worth and owned by Aaron

Smith and M. S. Sweet, and whereas the said Park, Pyle and Latham have entered into a contract with said Smith & Sweet, dated October 19, 1908, for 7,000 inches of advertising space in said newspaper, which said contract is here referred to and made a part hereof; and whereas it is not specifically agreed as to the rights of the said Park, Pyle and Latham among themselves as to the handling and application of the proceeds of said advertising, it is hereby agreed: First. That all money collected by and for the said Park, Pyle and Latham under said contract shall be paid to the said Milton Park as trustee, and by him deposited in the Gaston National Bank of Dallas, Texas, and shall be there kept as a separate fund in the name of said Milton Park, special, and for the use and benefit of said Park, Pyle and Latham. Second. On the 15th day of each month the money on deposit shall be distributed to said Park, Pyle and Latham equally after deducting all expenses and charges against same. Third. All advertising contracts shall be made payable to said Milton Park. Fourth. After the sum of $7,500 has been collected and paid out to the parties, as provided in paragraph 2 hereof, all future collections shall be divided, after deduction of all expenses, as follows: To Milton Park $7/35$, to O. P. Pyle $16/35$ and to George B. Latham $12/35$. But all money collected over $7,500 shall be credited pro rata on notes held by O. P. Pyle and George B. Latham."

On October 20, 1908, appellee Pyle borrowed $300 from the Commonwealth or Gaston National Bank, and gave his note of that date therefor due January 1, 1909, bearing interest at the rate of 10 per cent. per annum, and further promising to pay 10 per cent. as attorneys' fees if sued on or placed in the hands of an attorney for collection. On November 18, 1908, Pyle borrowed from the same bank the further sum of $200, giving his note therefor, bearing interest at the rate of 10 per cent. per annum and providing for attorneys' fees, due January 1, 1909, with appellant Park as security thereon. At the time Pyle got the said $300 and executed his note therefor, he delivered to the bank as collateral security for its payment ten of the $405 notes received by him in the sale of the printing outfit to Smith & Sweet, and executed and delivered to the bank an instrument in writing or power of attorney, whereby the bank was expressly authorized, in case of default in the payment of said $300 note at maturity, or any other indebtedness due said bank by the said Pyle, without notice to Pyle or any one else, to sell at private or public sale said securities and to deliver the same to the purchaser thereof; the proceeds to be applied first to the cost and expense incurred in the transaction and then to the payment of the indebtedness thereby secured. Neither the $300 nor the $200 note was paid at maturity, and there is evidence to the effect that thereafter, on or about the 4th day of February, the bank, in accordance with the terms of the written instrument or power of attorney referred to, sold the ten collateral notes of $405 each to Milton Park at and for the sum of $507. There was further testimony adduced to the effect that, after the purchase and acquisition of said ten notes of $405 each by appellant, Park, he, joined by the Farmers' Educational & Co-Operative Union Publishing Company and George B. Latham, executed a written instrument transferring to one C. D. Reimers, who had become the purchaser of or was negotiating a purchase of the printing press outfit heretofore mentioned, the five unpaid notes of $500 each due Park, the ten notes of $345 each due Latham, and said ten notes of $405; that for this transfer of said notes, and probably for the balance of the 7,000 inches of advertising space, contracted for by the contract of October 19, 1908, there was paid to appellant the sum of $5,600; that before this sale to Reimers appellant had collected under and by virtue of said advertising contract the sum of $1,333.91.

[1, 2] The substance of appellee's contention, as shown by his pleading, is that appellant, Park, was by the terms of the contract entered into between Park, Pyle, and Latham, on October 19, 1908, made a trustee for the collection and preservation for the parties at interest of all money realized on the advertising space contract; that as such trustee he had realized on said contract the sum of $6,933.91, being the aggregate of the two amounts above mentioned, and had wrongfully converted his (Pyle's) interest therein to his (Park's) own use. Appellant's contention seems to be that he was in no sense a trustee for Pyle or Latham; that he was simply an agent in the collection of money under the advertising contract; that there was no duty, trust, or obligation resting upon him to pay Pyle's notes to the bank for borrowed money to prevent a sale of the collateral notes; that he was never instructed by Pyle to pay said notes to the bank out of funds coming to him on the advertising contract, or any other fund; that Pyle never furnished him any money with which to pay said notes, and that he had never agreed to pay the same; that by his purchase under the sale made by the bank he became the owner of the ten collateral notes for $405 each, and was entitled to the proceeds realized from the sale thereof to Reimers; that the total amount received by him on the sale to Reimers and theretofore on the advertising contract was not equal to the amount due him on his five $500 notes and the ten $405 notes bought under the bank's sale; and that he was entitled to the whole of the fund, less the interest of Latham, as the owner of the ten $345 notes.

Appellant's assignments of error need not be stated and discussed in detail. The eighth and ninth assignments complain of the following paragraph of the court's charge: "If you find and believe from the evidence that the defendant Park bought the said ten $405 notes from the Commonwealth National Bank in good faith on the occasion referred to, and they were sold to him by said bank in due course of business, then you are instructed to find against plaintiff on his claim for a division of the said $5,600." These assignments assert, respectively, that this charge is erroneous because it required the jury to find, in order to return a verdict in favor of appellant: (1) That his purchase of the ten $405 collateral notes at the sale thereof by the Commonwealth National Bank was "in good faith"; (2) that said notes were purchased in "due course of business"; (3) that it was confusing and contradictory of the tenth paragraph of the charge. We think the objections are well taken and of themselves require a reversal of the case. The record does not, in our opinion, disclose the existence of any such trust relation between the appellant, Park, and the appellee, Pyle, at the time of the sale and purchase of the collateral notes, that would inhibit a purchase of said notes by Park. The contract entered into between Park, Pyle, and Latham on the 19th day of October, 1908, simply made Park an agent for the collection and distribution of the money realized on the contract with Smith & Sweet for advertising space, as in said contract directed, and did not create, in our opinion, any trust relation between Park and Pyle for the payment of Park and Pyle's debt to the bank out of money he may have had in his possession collected on said contract. The charge in requiring the jury to find that Park bought the collateral notes "in good faith" was calculated to mislead and induce the jury to believe that in the opinion of the court the agency of Park for the collection of money on the advertising space contract created some such trust relationship between Park and Pyle as made it, in the exercise of good faith, obligatory upon the former to pay off Pyle's notes to the bank, if Park then had in his hands sufficient money collected on said contract to do so, and that his failure so to do was an act of bad faith towards Pyle, or for some other reason may not have acted "in good faith" in the purchase of said collateral notes. The requirement that appellant must have bought the notes "in due course of business" was practically a peremptory instruction against him on the issue to which the charge in question related. There was no pretense that the notes were sold and purchased in the due course of business. On the contrary, it was conclusively shown that, if sold at all, the notes were sold under a special contract or power of attorney authorizing such sale in the event the indebtedness, secured by their hypothecation with the bank, was not paid at maturity. It is clear, we think, especially in view of the character of this litigation, that the errors in the charge under consideration were highly calculated to prejudice the rights of appellant. By the language of the charge complained of there were injected into the case foreign issues and a burden imposed upon appellant which we think the evidence did not justify.

[3] The instruction also seems to be in conflict with the tenth paragraph of the charge in that said tenth paragraph tells the jury, in effect, that if Smith & Sweet did not breach the advertising space contract, and Park became the purchaser of the ten $405 collateral notes and sold them to Reimers in cancellation thereof and said advertising contract, to find against Park as to the $5,600 got from Reimers, whereas in the eleventh paragraph they are told that if Park bought said ten notes, etc., to find in his favor and against Pyle for a division of said $5,600. Thus no affirmative or definite rule or guide was given the jury to enable them to properly determine the issue involved.

[4] Complaint is also made of the eighth paragraph of the court's charge, which reads as follows: "You are instructed to ascertain from the evidence the amount of money collected by the defendant Park on the claim of $1,333.91, and to such amount add the $5,600 collected by him from Reimers, which sum will stand as a charge against the defendant Park. Then you are further instructed that, if you find and believe from the evidence that Sweet & Smith failed and refused to comply with their part of the 7,000-inch space contract, under the provisions of said contract all the parties thereto were restored to their former rights under the pre-existing contracts, and the defendant's Park's five notes for $500 would still be a first lien on all the property sold to Sweet & Smith, and he would be entitled to a portion of the fund collected sufficient to satisfy said $500 notes and interest, and the balance of said fund should be divided between Latham and plaintiff as their respective interests might appear." We think the learned trial judge inadvertently fell into an error here. This instruction was prejudicial error for the reason that it ignored the issue of whether or not the appellant became and was the absolute owner of the ten $405 notes by purchase from the bank and was calculated to mislead the jury and cause them to believe that appellant, in any event, should be charged with the $5,600 received from Reimers and whatever amount he collected prior to the Reimers' transaction on the advertising contract, save and except such an amount thereof as was necessary to pay off and satisfy his five notes of $500 each executed and delivered to him as a part of the original purchase money for the printing press outfit.

As will be observed, the charge, after tell-

ing the jury that Park's five notes for $500 "would still be a lien on all the property sold to Sweet & Smith, and that he would be entitled to a portion of the fund collected sufficient to satisfy said $500 notes," proceeds to instruct them without qualification that "the balance of said fund should be divided between Latham and plaintiff (Pyle) as their respective interests might appear." The evidence was insufficient to show that Park was a trustee or agent of Pyle, in any of the matters alleged, or issues arising under the evidence, as to the payment of appellee's notes held by the bank, the sale of the collateral notes or their purchase by Park, and if Park, at a sale made of said collateral notes in accordance with the terms of the written instrument given by Pyle to the bank, became the purchaser of said collaterals, then Pyle had no interest in the $5,600 received from Reimers. The other assignments, unless the matter complained of in some material way conflicts with the views we have expressed, point out no reversible error.

[5] There are assignments charging that the court erred in failing to give certain instructions, but, if such failure was error, it was an error of omission and furnishes no ground for complaint in the absence of a requested special charge covering the matter. There are other assignments complaining of certain supposed errors in the court's charge, but a reading of the charges complained of disclose that they were statements of the appellee's pleadings or contentions which were not only proper but important for the jury to understand.

For the reasons indicated, the judgment is reversed, and the cause remanded.