. PYLE v. PARK et al. (No. 8122.)

(Court of Civil Appeals of Texas. Dallas. June 21, 1919. Rehearing Denied July 5, 1919.)

1. TRUSTS ⊂⇒30½—NATURE OF TRANSACTION —COLLECTIONS—APPLICATION TO NOTES.

Contract whereby first party agreed to make collections and make monthly payments of a portion of amount collected to second party, to apply toward payment on notes held by latter against third party, did not create trust relation between first and second parties requiring first party to apply collections to payment of second party's notes to bank with which he had deposited third party's notes as collateral.

2. APPEAL AND ERROR ⊂⇒1062(2)—REVIEW— HARMLESS ERROR.

Refusal to submit issue of whether certain payment was made on February 4th or on February 23d, if error, was harmless where court submitted issue of whether payment was made on February 4th, and jury answered issue affirmatively.

3. NOVATION ⊂⇒1—PAYMENT OF NOTES—COLLECTIONS.

Where holders of notes against newspaper publishers made contract whereby one of the holders was to sell advertising space, collect proceeds, and divide proceeds among holders, to apply on notes, the contract merely provided method of payment of notes and was not a novation.

4. CONTRACTS ⊂⇒176(1) — CONSTRUCTION — PROVINCE OF COURT.

The construction of written contracts upon which there was no attack upon ground of fraud, accident, or mistake was a matter of law, and not a question of fact for the jury.

5. TRIAL ⊂⇒143—PEREMPTORY INSTRUCTIONS —CONTROVERTED FACTS.

The giving of plaintiff's requested charges which were tantamount to peremptory instructions, when the only facts, which would in any event have entitled plaintiff thereto, were sharply controverted, would have been affirmative error.

6. JUDGMENT ⊂⇒256(1)—VERDICT—CONFORMITY TO.

It is court's duty to enter judgment in accordance with findings of jury, even though they are unsupported by the evidence, where verdict is not set aside.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by O. P. Pyle against Milton Park, in which M. C. Owen, as administrator of defendant Park's estate was made party defendant upon death of defendant Park.

Judgment for defendants, and plaintiff appeals. Affirmed.

See, also, 196 S. W. 243.

M. L. Dye, of Dallas, for appellant.

Muse & Muse, of Dallas, for appellees.

TALBOT, J. This suit was instituted by the appellant against Milton Park. Park died, and the administrator of his estate, M. C. Owen, was made party defendant. For a full statement of the nature of the case reference is made to the opinion of this court delivered on a former appeal, and to be found in 157 S. W. 445. Such other statement or statements as we deem necessary to the disposition of the present appeal will be added. In his third amended petition, upon which the case was tried, appellant alleged, in substance, that Milton Park was duly made, constituted, and appointed trustee and agent of plaintiff and Latham by the contract dated October 19, 1908, and that Park undertook and promised to collect as trustee, and to deposit in the Gaston National Bank, all money collected for Park, Pyle, and Latham, keeping the same in said bank as a separate fund in his name for the use and benefit of Park, Pyle, and Latham, and on the 15th day of each month to distribute said money equally amongst the parties, deducting all expenses and charges; that Park did, during the months of October, 1908, to May, 1909, and at other times, collect $1,333.91; that said Park and Latham, on or about February 23, 1909, sold and transferred to C. D. Reimers all the interest of plaintiff, Latham, and Park under the advertising contract, and all of the unused space for the sum of $5,600, which, together with the $1,333.91 collected on advertising account, aggregates $6,933.91, and that none of said amount has been deposited by Park in said bank, nor has any of said amount been paid over to plaintiff; that Park concealed from plaintiff and Latham the book showing the collections, and converted said amounts to his own use and benefit; that the contract with Smith & Sweet provided, among other things, that it was to begin November 1, 1908, and terminate June 1, 1911, except certain omissions, which were to be completed by or before December 1, 1911, and that whether or not the entire 7,000 inches of space is used by June 1, 1911, the remainder, if any, of said indebtedness of Smith & Sweet is to be canceled on that date, and all notes, if any unpaid, and the deeds of trust, are also to be canceled; that, by virtue of said contract with Smith & Sweet for 7,000 inches of advertising space, said notes of Park, Pyle, and Latham were discharged, and the makers thereof, Smith & Sweet, released from liability thereon; that said Park was a trustee to collect for space sold, and apply the proceeds to the payment pro rata of said notes, which was done until said trustee and Latham sold all of said unused space to Reimers; that, for the purpose of asserting a claim to plaintiff's one-third interest in said $6,933.91, the said trustee, Park, procured said Latham to sign with said Park the name of the payee of plaintiff's said notes on said transfer to Reimers, and together they transferred plaintiff's notes, together with the notes of Park and Latham, to Reimers for $5,600, and Pyle and Latham were released from all obligation in the transfer to Reimers; that the real purpose of such assignment and transfer of said notes was to assign said 7,000 inches of advertising space to Reimers, and to release him from his obligation to furnish same for the purpose aforesaid; that the transfer of said notes to Reimers was made by Park with the intent to defraud plaintiff and to afford Park a pretext for withholding and unlawfully converting plaintiff's money to Park's own use; that, after said notes were transferred to Reimers, he made no effort to collect them from the makers, Smith & Sweet, but destroyed them; that the total principal of said notes amounted to $10,000; that plaintiff, Park, and Latham were each entitled to 56 per cent. of the amount contributed by them in the enterprise; that this distribution of the $5,600 was agreed on between plaintiff, Park, and Latham prior to the time the money was paid to Park by Reimers; that Latham has received 56 per cent. of said amount from Park, who promised Latham, as the representative of plaintiff, to pay plaintiff the same per cent., which has not been done; that 56 per cent. of the $4,050 which Park refused to deliver to plaintiff amounted to $2,712.63. By supplemental petition appellant alleged that said notes were settled, novated, and discharged by said agreement for space, and "that a short time prior to February 23, 1909, plaintiff's said agent and trustee, Park, conspiring and confederating with H. L. Tenison and R. C. Ayres, officers of said bank, while plaintiff, on account of sickness and ill health, was absent from the city of Dallas, obtained possession of plaintiff's said extinguished notes from said bank, which notes have been settled, and were worthless in consequence of said novation or new contract for said space as aforesaid, and wrongfully and fraudulently set up a claim to said notes on or about the 23d day of February, 1909, wrongfully and fraudulently obtained possession of said extinguished notes, and transferred them to C. D. Reimers for $5,600; * * * that the assignment and transfer of said notes, extinguished as aforesaid, to Reimers was a mere pretext and contrivance to defraud plaintiff, concocted and planned by said Park, trustee, aided by and through R. C. Ayres and H. L. Tenison, to appropriate and misapply plaintiff's said interest in and to said

$1,331.91, and in and to said $5,600, the subject of said trust, to his own use and benefit, without the knowledge of plaintiff." Upon the answers of the jury to special issues submitted by the court judgment was rendered in favor of appellees. From this judgment appellant perfected an appeal.

The amended petition of the appellant, as will be seen from the above quotation, alleged, in substance, that for the purpose of asserting a claim to appellant's one-third interest in the $6,933.91 charged to have been collected on the advertising contract, Milton Park procured Latham to sign with him the name of the payee of plaintiff's said notes on said transfer to Reimers, and together they transferred plaintiff's notes to Reimers for $5,600, and Pyle and Latham were released from all obligation in the transfer to Reimers; that the transfer of said notes to Reimers was made by Park, with the intent to defraud appellant, and to afford Park a pretext for withholding and unlawfully converting appellant's money to Park's own use. Said petition further alleges an agreement on the part of the appellant, Park, and Latham to make a pro rata distribution of $5,600 received as a consideration for the transfer of the notes, and facts showing that Park has collected and had in his possession under the contracts entered into funds belonging to the appellant. The respective contentions of the parties, other than shown by the pleading just referred to, will be found stated in our opinion on the former appeal of the case.

The first assignment of error now presented is:

"The court below erred in refusing to submit to the jury special issue requested by plaintiff as follows: 'Did defendant (Park) acquire from the bank said collateral notes with intent to defraud plaintiff, O. P. Pyle?'"

We think, in view of the evidence and certain findings of the jury, no error was committed. The evidence was insufficient to raise the issue sought to be submitted. The notes in question had been hypothecated by appellant with the Gaston National Bank, afterwards Commonwealth National Bank, to secure the payment of an indebtedness due the bank by appellant, amounting to $500, besides interest and attorney's fees. Three hundred dollars of this indebtedness was evidenced by Pyle's promissory note dated October 20, 1908, and due January 1, 1909. Two hundred dollars of said indebtedness was evidenced by Pyle's promissory note dated November 18, 1908, and due January 1, 1909. At the time Pyle executed his note for the $300 he delivered to the bank, as collateral security for its payment, 10 of the $405 notes received by him in the sale of the printing outfit to Smith & Sweet, and executed and delivered to the bank an instrument in writing, or power of attorney,

whereby the bank was expressly authorized, in case of default in the payment of said $300 note at maturity, or any other indebtedness due said bank by said Pyle, without notice to Pyle or any one else, to sell at private or public sale said securities and to deliver the same to the purchaser thereof; the proceeds to be applied first to the cost and expense incurred in the transaction, and then to the payment of the indebtedness thereby secured. Neither the $300 nor the $200 note was paid at maturity, and the jury found that thereafter, on the 4th day of February, 1909, the bank, in accordance with the terms of the written instrument or power of attorney referred to, sold the ten collateral notes of $405 each to Milton Park at and for the sum of $507. The jury further found, in substance, that appellant never authorized or requested Milton Park to pay the indebtedness due by him to the bank out of collections to be made under the advertising contracts procured under the contract of October 18, 1908, and designated as the "sale of space" contract, and that Milton Park never promised appellant to pay the bank the said notes out of such collections, and in no way paid said notes for Pyle. The jury further found that neither Milton Park nor appellant Pyle told R. C. Ayres, president of the bank, that the indebtedness due the bank by Pyle, or any part of it, was to be paid by collections derived from advertising contracts under the "sale of space" contract of October 19, 1908, and that the bank was not advised that said indebtedness was to be paid out of such collections. There is no assignment of error challenging the sufficiency of the evidence to support these findings, and if there were it could not be sustained. The allegations of appellant, therefore, to the effect that Milton Park conspired with the officers of the bank to obtain possession of the ten collateral notes of $405 each, and by such means wrongfully and fraudulently obtained the same and converted them to his own use, were not sustained. On the contrary, the evidence and findings of the jury are sufficient to sustain the contention of the appellees that Pyle made no request of Milton Park to pay his indebtedness to the bank; that he furnished no funds to Park with which to pay said indebtedness; that at the time Park purchased the collateral notes he did not have in his hands a sufficient amount of money collected from sale of advertisements, under the "space contract" to discharge said indebtedness, even if he had been authorized to appropriate it in that way; that the bank, under its authority in writing to so do, sold the ten collateral notes, of $405 each, to Milton Park on the 4th day of February, 1909, before the sale and transfer of the same to Reimers, which occurred on February 23, 1909, for a valuable consideration.

[1] The agency of Park for the collection of money on the advertising space contract did not, in our opinion, create any such trust relation between Park and Pyle as made it, in the exercise of good faith, obligatory upon Park to pay off Pyle's notes to the bank, even if he then had in his hands sufficient money collected on said contract to do so. Under the facts shown Park had the same legal right that any other person had to buy the collateral notes, and upon purchase from the bank of said notes he became the owner of them, and Pyle had no further interest in them or the advertising space contract or distribution contract. Park, therefore, was entitled to the proceeds realized from the sale of said collateral notes to Reimers. The total amount received by Park on the sale to Reimers, and theretofore collected on the advertising contract, was not equal to the amount due him on his five notes of $500 each, and the ten collateral notes of $405 each, bought at their sale by the bank, and hence he was entitled to the whole of the fund, less the interest of Latham as the owner of the $345 notes. The findings of fact by the jury referred to above are equivalent, it occurs to us, to a finding of the nonexistence of any wrongful act on the part of Park upon which fraud or fraudulent intent could be predicated in Park's acquisition of the collateral notes from the bank, and the failure to submit the question of fraudulent intent on the part of Park as embodied in the question requested by appellant and refused furnishes no ground for a reversal of the case.

[2] The court refused to submit the question, "When did Park pay the $507 to the bank, February 4th or February 23d, 1909?" And this action is made the basis of appellant's second assignment of error. There was no error in this action of the court. Special issue No. 10 submitted by the court is as follows:

"Do you find and believe from the evidence that on February 4, 1909, in consideration of $507, under the terms of the collateral agreement in evidence, the Commonwealth National Bank sold and delivered the ten $405 notes to Milton Park?"

This issue was answered in the affirmative by the jury, and is a finding that Park paid the $507 to the bank on February 4, 1909. There seems to have been no objection to the submission of the question in the form it was submitted, and if there was any technical error in the failure to submit it in the form requested by appellant the error was harmless.

The third and fourth assignments of error complain, respectively, of the trial court's refusal to submit the following special issues requested by appellant:

"Was the distribution contract a settlement of all matters between Park, Pyle, and Latham arising out of the contract for space with Smith & Sweet, and fixing the rights at one-third each in the proceeds of said advertising?"

"Were the notes executed and assumed by Smith & Sweet settled by Smith & Sweet's agreement to furnish said 7,000 inches of space? Were the said collateral notes settled by said agreement for space?"

Substantially for the reasons urged by the appellees we think the court did not err in refusing to submit these issues. The substance of the jury's finding upon special issue No. 12, submitted by the court, is that the advertising space contract was to provide security and a method for the payment of the notes therein described, subject to the cancellation of the notes under the conditions stipulated in said contract.

[3] The contracts of October 19, 1908, were not a novation of the notes therein described, as it appears on their face that the notes were not extinguished and the contracts substituted for the debt. The contracts, as we understand them, show the continued existence of the debt evidenced by the notes in question, and provide a method of payment and of credit thereon, and ultimate cancellation of said notes subject to the conditions of the "space contract." The contention of appellant seems to be that the notes described in the contract of October 19, 1908, were novated, extinguished, and settled by the execution of said contract. In other words, that the notes and debt became discharged, and their place taken by the advertising space contracts; that the bank acquired no obligation when it accepted the ten notes of $405 as collateral to secure the debt due it by Pyle; that the thing sold to Reimers was the space contract and that, notes being dead, novated, and out of the way, Pyle was entitled to his part of the proceeds arising from the space contract, unaffected by Park's purchase of the notes. These contentions are untenable.

[4] The contracts speak for themselves, independently of the findings of the jury, and the construction of them was matter of law and not a question of fact for the determination of the jury, since there was no attack upon them on the ground of fraud, accident, or mistake. As we have indicated, there was no novation or extinguishment of the notes by the execution of the contracts referred to, and, Park having become the purchaser under the sale made by the bank by virtue of the written authority given by Pyle, he became the legal owner of the notes so purchased, and entitled to all the rights and securities provided under the contract for their payment.

The refusal of special charges requested by the appellant is made the basis of the fifth and sixth assignments of error. These

charges are to the effect that in collecting the $1,333.91 for advertising and the $5,600 from Reimers. Milton Park occupied the fiduciary relation of trustee or agent of his principal, O. P. Pyle, and that as such trustee or agent he was forbidden to deal with said sums for his own benefit, and could not acquire adverse or antagonistic right or interest in said fund; that, if he (Park) purchased the ten collateral notes from the bank, such purchase would inure to the benefit of appellant, Pyle; that Park would only be entitled to withhold out of appellant's interest in said fund the amount of $507, paid the bank for said collateral notes; that the jury would therefore, after deducting the said $507 from $2,712.63, appellant's part of the $6,933.91 collected by said Park, return a verdict for appellant, Pyle, for $2,205.63, with interest thereon from February 23, 1909, at the rate of 6 per cent. per annum.

[5] Neither of these charges correctly stated the law applicable to the facts as found by the jury; they were tantamount to peremptory instructions for the appellant when the only facts which would, in any event, have entitled appellant to such instructions were sharply controverted, and it would have been affirmative error against appellees to have given them. The special charges were properly refused.

The seventh and eighth assignments of error will also be overruled. It follows from what we have said in the foregoing discussion of other assignments of error that the court would not have been authorized, under the findings of the jury, to enter judgment in favor of appellant, but was authorized to render the judgment it did in favor of the appellees.

The ninth and last assignment of error is to the effect that the court below erred in rendering judgment for the defendant on the answers of the jury to the three supplemental special issues, because the answers of the jury to such special issues were wholly without evidence to support them, the only testimony being that of Aaron Smith, and said three issues were immaterial. This assignment points out no error. The judgment of the court is undoubtedly bottomed upon the findings of the jury to the effect that the purchase by Park of the 10 collateral notes from the bank was an authorized and valid purchase; that by this purchase Park became the owner of said notes, and was entitled to the proceeds of the sale thereof to Reimers, and to the entire fund collected on the advertising contract, less the interest of Latham.

[6] If the findings of the jury were material and essential to the judgment rendered, then they could not be ignored by the court in determining what judgment should be rendered, but it was the court's duty to enter judgment in accordance with such findings, even though they were wholly unsupported by the evidence. The judgment must follow and be based upon the jury's verdict, and in case the verdict is not supported by the evidence the remedy is to set aside the verdict and order a new trial. There is no assignment of error presented in the brief that the court erred in refusing to grant appellant a new trial because the verdict was unsupported by the evidence or for any other reason.

The judgment is affirmed.

---

⬤⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes